UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MANUELA Q. FRANCO,     Case No. 03-13492 tr7

Consolidated with:

MANUELA Q. FRANCO,     Case No. 13-12941 tr7

    Debtor.

CLARKE C. COLL, Chapter 7 trustee,

    Plaintiff and Counterdefendant,

v.

CARLA FRANCO, individually
and as personal representative of
HIPOLITO Q. FRANCO, and
DRENNAN, LANGDON, & FIDEL, LLP,

    Defendants, Counterplaintiffs, and
    Third Party Plaintiffs,

v.     Adv. No. 17-1001 t

MANUELA Q. FRANCO, HV FRANCO
MINERALS, CELIA F. HOUGLAND, and
ROBERT D. HOUGLAND,

    Third Party Defendants.

## **OPINION**

Before the Court is the chapter 7 trustee's motion to dismiss the counterclaims of Carla Franco and Drennan, Langdon, and Fidel, LLP, under, inter alia, the *Barton* doctrine and quasi-judicial immunity. The motion has been fully briefed. After reviewing the relevant law, the Court concludes that Counts Two, Three, and Four of the counterclaims should be dismissed.

I. ALLEGATIONS

For the limited purpose of ruling on the trustee's motion to dismiss, the Court accepts the following allegations as true:[1]

By warranty deeds recorded in Book 251, Pg. 295 (1982), and Book 264, Pg. 222 (1996), Epolito V. Franco ("E. Franco") and Manuela Q. Franco ("Debtor") conveyed 123.48 acres of real property in Eddy County, New Mexico to Hipolito Franco ("H. Franco") and Carla Franco ("C. Franco"). The deeds did not reserve any mineral rights in, on, or under the property (the "Mineral Rights").

Debtor signed and recorded a third warranty deed in Book 326, Pg. 278 (1998),[2] that purported to correct the legal description of the prior deeds by describing the property conveyed as "the surface estate only." The deed was neither signed nor ratified by H. Franco or C. Franco.

Debtor also recorded in Book 825, Pg. 570 (2010) a document styled "CLARIFICATION Letter of Warranty Deed's & Mineral Rights." The letter asserts that E. Franco and Debtor never transferred any mineral rights, notwithstanding the numerous recorded deeds reflecting otherwise. The document concludes: "Upon my husband's passing in November of 1997, I, Manuela Q. Franco, became soul [sic] holder of one-half of the mineral right originally received from O.J. McCarty & Mary McCarty." This document clouds C. Franco's title to the Mineral Rights.

Debtor also recorded an affidavit in Book 858, Pg. 713 (2011) ("Debtor Affidavit"). The affidavit lists and summarizes several documents attached as exhibits, a number of which are

---

[1] In construing the complaint, the Court presents the allegations in the manner most favorable to Plaintiffs. *See Davis v. McCollum,* 798 F.3d 1317, 1319 n. 2 (10th Cir. 2015). Further, to better understand and construe the allegations, the Court took judicial notice of the relevant docket entries. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its docket).
[2] H. Franco died in 1997.

fabricated and fraudulent. These include:

- A "Deed Transter," [sic] which purports to convey mineral rights from E. Franco to Debtor (the "Deed Transter");
- An affidavit, allegedly signed by Sharon Hill on April 1, 2011 (the "Hill Affidavit");
- A "Reservation," purportedly dated April 17, 1969, reserving all mineral rights and asserting Debtor's ownership of the Mineral Rights ("Reservation"); and
- A "Mineral Deed" recorded in Book 858, Pg. 747 (2011), purporting to convey the Mineral Rights to HV Franco Minerals.

Debtor filed Chapter 7 bankruptcy cases in 2003 and 2013. Clarke Coll was appointed the case trustee in both cases (the "Trustee"). Debtor did not disclose any of the Mineral Rights she now claims are estate property. Debtor received "no-asset" discharges in both cases.

Debtor's claim to the Mineral Rights is made in bad faith because in both bankruptcy petitions she represented that she had no interest in the Mineral Rights.

Debtor did not attempt to reopen her bankruptcy cases to disclose her purported interest in the Mineral Rights until C. Franco obtained a state court judgment against her and others.

After entry of the judgment, the Trustee asserted an interest in the Mineral Rights.

The Trustee's assertions regarding the estate's alleged interest in the Mineral Right constitute disparaging statements to third parties concerning C. Franco's title to the Mineral Rights. If and to the extent the Trustee has filed documents in public records making such assertions, such documents also constitute disparaging and unfounded statements to third parties concerning ownership of the Mineral Rights.

The publication of the disparaging statements and the filing of the disparaging documents by the Trustee was done without right or privilege. The Trustee acted with malice in disparaging C. Franco's title to the Mineral Rights.

One or both of the Houglands fabricated the Debtor Affidavit, the Sharon Hill Affidavit,

the Deed Transter, the Reservation, and an attachment to a crop share lease. The Houglands attempted to offer these documents as evidence in legal proceedings. The Houglands filed the documents in the Eddy County Records. These acts violated state and federal law, and were designed to defraud C. Franco and others.

C. Hougland tampered with purported receipts or work orders from a title company by hand-writing comments that purport to evidence that the deeds originally prepared by the title company included scrivener's errors. C. Hougland used these documents to induce a title company employee to sign affidavits of scrivener's error that falsely assert numerous deeds prepared by the title company mistakenly omitted mineral reservations, including deeds involving the Mineral Rights.

In 2006, Debtor leased the Mineral Rights to OGX Resources LLC (the "OGX Lease"), even though she knew C. Franco owned the Mineral Rights. Debtor kept all the money paid under the OGX Lease even though she knew she had no right to the money.

C. Hougland knowingly gave false testimony in a deposition about ownership of the Mineral Rights. For example, she swore that certain documents were legitimate when she knew that she and her husband had fabricated them. Debtor also gave false testimony in a deposition about ownership of the Mineral Rights, e.g., she swore she signed the "Reservation" in 1969, although that was impossible.

The Trustee asserts that Debtor's estate owns part of the Mineral Rights, even though he knows or should know that the estate has no good faith claim to the Mineral Rights.

The documents discussed above, which were published or filed by the Trustee, disparage C. Franco's ownership of the Mineral Rights.

It was foreseeable to the Trustee that the publication and/or filing of the documents would

impair the marketability and value of C. Franco's interest in the Mineral Rights, particularly her the ability to lease them.

It was foreseeable to the Trustee that the publication and/or filing of the documents would require C. Franco to spend money to remove the clouds on title.

C. Franco's damages caused by the Trustee's actions include, without limitation, (i) at least $61,740.00, paid to Debtor under the OGX Lease; and (ii) $115,000.00 in costs, including attorney's fees, incurred removing the clouds on C. Franco's title. C. Franco is also entitled to an award of punitive damages against the third party defendants.

The Houglands had a plan and an agreement with Debtor to, inter alia, fabricate documents, forge signatures, give false testimony, and tamper with the public records in the furtherance of a scheme to disparage C. Franco's title to the Mineral Rights, their objective being to appropriate the Mineral Rights and the benefits flowing therefrom.

The Houglands and Debtor are jointly and severally liable for damages arising from their conspiracy to disparage C. Franco's title.

Debtor received money under the OGX Lease she had no right to receive. Debtor would be unjustly enriched if she were allowed to retain the money. It is appropriate for the Court to impose a constructive trust upon the money, and C. Franco asks the Court to do so.

Counterplaintiffs did not seek or obtain approval from the Court before bringing their claims against the Trustee. Counterplaintiffs do not allege that the Trustee breached his fiduciary duties.

## II.     DISCUSSION

A.     Rule[3] 12(b)(1) Standards.

The Trustee seeks dismissal of the counterclaims under Rule 12(b)(1) (lack of subject matter jurisdiction). Rule 12(b)(1) applies to *Barton* doctrine issues. *See, e.g., Satterfield v. Mallory,* 700 F.3d 1231, 1234 (10th Cir. 2012) ("[t]he *Barton* doctrine is jurisdictional in nature").

Rule 12(b)(1) allows a party to argue, by motion, that a court lacks jurisdiction over the subject matter of a claim. Such motions "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). In the case of a facial attack (such as the Trustee's motion to dismiss), the Court presumes that all of the allegations in the counterclaims are true. *Id.*; *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir. 1981). Based on this presumption, the Court then determines whether, as a matter of law, it has jurisdiction over the claims.

B.     Rule 12(b)(6) Standards.

Rule 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Genesee County Employees' Retirement System v. Thornburg Mortgage Securities Trust 2006-3*,

---

[3] A "Rule" refers to the Federal Rules of Civil Procedure.

825 F. Supp. 2d 1082, 1120-21 (D.N.M. 2011), citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Legal conclusions cast in the form of factual allegations need not be taken as true for Rule 12(b)(6) purposes. *See Ashcroft v. Iqbal,* 556 U.S. 662 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

When entertaining a motion to dismiss, the Court is permitted "to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg v. Gibson,* 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds* by *McGregor v. Gibson,* 248 F.3d 946, 955 (10th Cir. 2001). A court may also consider any documents to which the complaint refers, provided the documents are central to the plaintiff's claim and the parties do not dispute their authenticity. *See Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941-942 (10th Cir. 2002).

Motions to dismiss based on quasi-judicial immunity are typically evaluated under Rule 12(b)(6). *See Moss v. Kopp*, 559 F.3d 1155, 1170 (10th Cir. 2009); *Gregory v. U.S./U.S. Bankruptcy Court for the Dist. of Colorado,* 942 F.2d 1498, 1500 (10th Cir. 1991) (*sua sponte* invocation of Rule 12(b)(6) was appropriate because it "appear[ed] beyond doubt" that based on the allegations in the complaint, the trustee was entitled to quasi-judicial immunity).

C.   The *Barton* Doctrine.

The Trustee seeks dismissal of the counterclaim under the "*Barton* doctrine."[4] The *Barton* doctrine "precludes suit against a bankruptcy trustee for claims based on alleged misconduct in the discharge of a trustee's official duties absent approval from the appointing bankruptcy court."

---

[4] The name of the doctrine is taken from the Supreme Court's decision in *Barton v. Barbour*, 104 U.S. 126, 131 (1881).

*Lankford v. Wagner,* 853 F.3d 1119, 1122 (10th Cir. 2017), quoting *Satterfield v. Malloy,* 700 F.3d 1231, 1234-35 (10th Cir. 2012). "This is true even if the trustee allegedly acted 'with improper motives.'" 853 F.3d at 1122. The doctrine is intended to prevent a plaintiff from obtaining "some advantage over the other claimants upon the assets in the receiver's hands.'" *Satterfield v. Malloy*, 700 F.3d at 1234, quoting *Barton,* 104 U.S. at 128. Here, the counterplaintiffs seek compensatory and other damages from the Trustee for actions he took, and continues to take, in his capacity as the chapter 7 trustee.

D.  The Trustee's Quasi-Judicial Immunity.

The Trustee also asserts that the counterclaims are barred under the doctrine of quasi-judicial immunity.

1.  Judicial Immunity. A trustee's immunity has roots in the immunity granted to judges. *Forrester v. White*, 484 U.S. 219, 225 (1987); *Stump v. Sparkman,* 435 U.S. 349 (1978). Judges are given a "sweeping form of immunity." *Forrester,* 484 U.S. at 225 (1987). "This absolute immunity insulates judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives." *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002) (quoting *Forrester,* 484 U.S. at 227-28). *See also Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) ("Judges are absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction."). Judicial immunity is a creature of the common law, and can trace its roots back hundreds of years to English law precedents. *See* Block, *Stump v. Sparkman* and the History of Judicial Immunity, 1980 Duke L.J. 879; *Forrester,* 484 U.S. at 225 ("judicial immunity is a well settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country").

2. <u>Quasi-Judicial Immunity</u>. Judicial immunity "has been extended to non-judicial officers where their duties had an integral relationship with the judicial process." *Whitesel*, 222 F.3d at 867 (quotations omitted). This extension is referred to as "quasi-judicial immunity." Quasi-judicial immunity can apply to law clerks, military and naval officers, prosecutors, administrative law judges, agency officials, jurors, mediators, advocates, and witnesses. *Castillo*, 297 F.3d at 948. *See also Martinez v. Roth,* 53 F.3d 342 (10th Cir. 1995) (quasi-judicial immunity has been extended to a court-appointed psychologist, law clerks, probation officers, and mediators).

3. <u>Quasi-Judicial Immunity for Bankruptcy Trustees</u>. Application of the quasi-judicial immunity doctrine to suits against bankruptcy trustees varies a great deal. In the Tenth Circuit, for all claims except those alleging breach of fiduciary duty, trustees have absolute quasi-judicial immunity from personal liability if they acted within the scope of their authority. *See, e.g., Castillo,* 297 F.3d at 951 (citing *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 433-34 (1993)); *Gregory v. U.S./U.S. Bankruptcy Court for the Dist. of Colorado,* 942 F.2d 1498, 1500 (10th Cir. 1991); *Whitesel,* 222 F.3d at 867; *Castillo,* 297 F.3d at 951-952. A trustee has absolute quasi-judicial immunity for any mistakes made while discharging the judicial function, just as a judge would have absolute immunity for any mistakes in applying the law. *Id.*

Using essentially the same reasoning, other courts have extended quasi-judicial immunity to trustees' actions taken within the "scope of their authority." *See In re J&S Properties, LLC,* 545 B.R. 91, 103 (Bankr. W.D. Pa. 2015) (collecting cases); *Carrillo v. Wieland,* 527 Fed. Appx. 754, 757 (10th Cir. 2013); *Barbee v. Price Waterhouse, LLP (In re Solar Fin. Servs.),* 255 B.R. 801, 803 (Bankr. S.D. Fla. 2000); *Grant v. Florida Power Corp. (In re Markos Gurnee P'ship),* 186 B.R. 526 (Bankr. M.D. Fla. 1995). "Scope" cases generally involve third parties, but the Tenth Circuit has applied the analysis to claims asserted by estate beneficiaries. *See, e.g., Carrillo,* 526

Fed. Appx. at 757; *Gregory*, 942 F.2d at 1499. Thus, except for breach of duty claims, so long as trustees act pursuant to their court-appointed function and authority, they are immune from personal liability.

E.   The Counterclaims.

Count One: Quiet Title. The Court construes this claim as being brought against Debtor's estate only, not against the Trustee personally. Under this construction, the Court will not dismiss the quiet title claim. The claim seems duplicative of the Trustee's Count I, but it does not run afoul of the *Barton* doctrine or quasi-judicial immunity.

Count Two: Disparagement of Title.[5] In this count, the counterplaintiffs seek money damages from the Trustee personally for disparagement/slander of title. Counterplaintiffs are unhappy the Trustee asserts that the estate has an interest in the Mineral Rights. Counterplaintiffs did not seek the Court's approval before bringing the claim. The Trustee may (or may not) prevail, but the Court has already ruled that there is a bona fide dispute about ownership of the Mineral Rights. The Trustee is therefore acting well within the scope of his official duties. Count Two violates the *Barton* doctrine, so the Court lacks subject matter jurisdiction over the claim. *See Lankford v. Wagner*, 853 F.3d at 1122 (affirming dismissal of claim against a bankruptcy trustee for failure to comply with the *Barton* doctrine). Further, the Trustee is protected against the claim by quasi-judicial immunity. Clearly, it is not a breach of duty for the Trustee to assert that his bankruptcy estate owns a valuable asset. Count Two must be dismissed.

Count Three: Civil Conspiracy to Disparage Title. This claim does not appear to be brought against the Trustee. To the extent it is, it will be dismissed for the same reasons as Count Two.

---

[5] As the Trustee points out, there is no cause of action in New Mexico for "disparagement of title." The Court construes the count as seeking relief for an alleged slander of title. *See Den-Gar Enterprises v. Romero*, 94 N.M. 425, 430 (Ct. App. 1980).

Count Four: Constructive Trust. The Trustee is correct that imposing a constructive trust is a remedy, not an independent cause of action. *See, e.g., U.S. Dept. of Energy v. Seneca Oil Co. (In re Seneca Oil Co.),* 906 F.2d 1445, 1450 (10th Cir. 1990) ("a constructive trust is an equitable remedy that is imposed for the recovery of wrongfully-held property."). As such, Count Four is not properly pled (it should have been a claim to recover the lease payments under a conversion or similar theory), and should be dismissed. Further, the claim does not appear to be directed against the Trustee. Third, to the extent the claim is asserted against the Trustee personally, it must be dismissed for the same reasons as Count Two.

### III. CONCLUSION

The Trustee's motion to dismiss is well taken as it relates to Counts Two, Three, and Four. Count One shall remain, subject to the understanding that the defendant is the estate, not the Trustee personally. The Court will enter a separate order.

_____
David T. Thuma
United States Bankruptcy Judge

Entered: February 28, 2018

Copies to: Counsel of record