UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

MANUELA Q. FRANCO,　　　　　　　　　　　　　　　　　Case No. 03-13492 tr7
　　　　　　　　　　　　　　　　　　　　　　　　　　(consolidated with 13-12941)
　　　Debtor.

CLARKE C. COLL, Chapter 7 trustee,

　　　Plaintiff and Counterdefendant,

v.

CARLA FRANCO, individually
and as personal representative of
HIPOLITO Q. FRANCO, and
DRENNAN, LANGDON, & FIDEL, LLP,

　　　Defendants, Counterplaintiffs, and
　　　Third-party Plaintiffs,

v.　　　　　　　　　　　　　　　　　　　　　　　　　Adv. No. 17-1001 t

MANUELA Q. FRANCO, HV FRANCO
MINERALS, CELIA F. HOUGLAND, and
ROBERT D. HOUGLAND,

　　　Third-party Defendants.

## **OPINION**

　　　Before the Court are defendant Carla Franco's motions to strike the answers to her quiet title counterclaim and third-party claim. The grounds for the motions are that the answers were filed late. Having considered the motions, the briefs filed by the parties, and the relevant dockets, the Court finds and concludes that the motions are not well taken and should be denied.

### I.　　PROCEDURAL HISTORY

　　　Plaintiff filed this adversary proceeding against Carla Franco on January 16, 2017. The

complaint sought to quiet title to certain mineral rights and to disallow Ms. Franco's proof of claim.

On October 18, 2017, Carla Franco answered the complaint, asserted a counterclaim, and also brought a third-party claim against Manuela Q. Franco, HV Franco Minerals, Celia F. Hougland, and Robert D. Hougland. The counterclaim and third-party claim had quiet title counts, essentially the obverse of plaintiff's quiet title count. Also asserted were counts for disparagement of title, civil conspiracy to disparage title, and constructive trust.

On October 27, 2017, plaintiff filed an amended complaint. Carla Franco timely answered and reasserted her counterclaim and third-party claim.[1] Plaintiff and third-party defendants timely filed motions to dismiss.[2]

On February 28, 2018, the Court dismissed counts two, three, and four of the counterclaim, leaving only the quiet title count. Three weeks later the Court denied the third parties' motion to dismiss the quiet title count; ruled that their motion to dismiss the disparagement of title count should be handled as a summary judgment motion; and deferred ruling on the civil conspiracy count. In the March 21, 2018, order the Court directed Carla Franco's counsel to:

> circulate to opposing counsel a proposed agreed partial final judgment, reflecting that movants have disclaimed any interest in the mineral rights at issue. The judgment may also reflect that Hipolito Q. Franco's[3] only claim to the mineral rights at issue currently is property of the bankruptcy estate.

No such partial final judgment was ever presented to the Court, nor did Carla Franco ask for clarification of the Court's ruling or a presentment hearing.

The parties fully briefed whether the third parties were entitled to summary judgment on Carla Franco's disparagement of title count.

---

[1] The pleading was incorrectly styled as a motion for extension of time rather than an answer.
[2] Plaintiff (on October 27, 2017) and third parties (on November 8, 2017) had filed motions to dismiss Carla Franco's original counterclaim and third party claim. The motions were refiled when Ms. Franco answered plaintiff's amended complaint.
[3] The order should have said Manuela Q. Franco, not Hipolito Q. Franco.

Plaintiff answered the quiet title count of the counterclaim on August 8, 2018. The third parties answered the quiet title count of the third party claim on September 5, 2018. The same day, Carla Franco filed motions to strike both answers as late.

On October 11, 2018, the Court granted summary judgment to the third parties on the disparagement of title count against them. Carla Franco has appealed the judgment. The appeal is pending.

On February 22, 2019, plaintiff filed a notice in the main bankruptcy case proposing to abandon the estate's interest in the disputed mineral rights. No objections were filed. The abandonment was self-executing, so any estate interest in the disputed minerals is once again owned by third party Manuela Franco.

## II. DISCUSSION

A. *Striking Answers is Disfavored.*

The court in *Barefield v. HSBC Holdings PLC*, 2019 WL 918206 (E.D. Cal.), discussed motions to strike untimely answers:

> [C]ourts rarely grant motions to strike answers. Indeed, "federal courts in this and other circuits generally hold that the untimeliness of an answer, even if extreme ..., is not, by itself, a sufficient reason for granting a motion to strike." *Wynes v. Kaiser Permanente Hosps.*, 2013 WL 2449498, at *1 (E.D. Cal.) (declining to strike entirety of answer to counterclaims filed more than nine months late); *see also Franklin v. County of Placer*, 2018 WL 1940956, at *6 (E.D. Cal.) ("[S]triking an answer is not the remedy for a failure to timely respond to a complaint.") (collecting cases), *report and recommendation adopted*, 2018 WL 3105757 (E.D. Cal.)
>
> . . . .
>
> Even in cases where the more than a year has passed since the deadline to file an answer, courts are reluctant to grant motions to strike. *See, e.g., Beal v. U.S. Dep't of Agric.*, 2012 WL 3113181, at *2 (E.D. Wash.) (declining to strike answer filed 14 months late in light of judicial preference for deciding cases on the merits). In extreme cases where courts do grant motions to strike, they are nevertheless loath to allow the resulting default judgment to stand. *See Capen*, 2016 WL 9083270, at *2 (striking answer filed a year late but granting defendant opportunity to move to

set aside the default under Fed. R. Civ. P. 55(c) and seek to file an untimely answer pursuant to Fed. R. Civ. P. 6(b)); *Lake v. Fellner*, 2014 WL 664653, at *2–3 (D. Nev.) (granting motion to strike answer filed more than a year after the deadline and after entry of default but setting aside entry of default).

2019 WL 918206 at *3 (case numbers and dates omitted from the citations to unpublished decisions).

The reluctance to strike late answers is consistent with the public policy in favor of deciding disputes on the merits rather than on procedural grounds. *See Davis v. Kaiser*, 12 Fed. App'x 902, 904 (10th Cir. 2001) (unpublished) ("Strong policies favor resolution of disputes on their merits"); *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir.1983) (same); *In re Rains*, 946 F.2d 731, 732-33 (10th Cir. 1991) (same); *Martinez v. CitiMortgage, Inc.*, 347 F. Supp. 3d 677, 690 (D.N.M. 2018) (same).[4]

B.  There is No Specific Sanction for a Late-Filed Answer.

"Most courts entertaining motions to do away with untimely answers . . . use the language of motions to strike brought pursuant to Rule 12(f)." *Barefield*, 2019 WL 918206 at *2.[5]

---

[4] Motions to strike are disfavored, whether the target is an untimely answer or a disputed defense. In *Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc.*, 2010 WL 132414 (N.D. Okla.), for example, the court held that "Striking a pleading or part of a pleading is a 'drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored.'" 2010 WL 132414, at *5 (quoting *Burget v. Capital W. Sec., Inc.*, 2009 WL 4807619 at *1 (W.D. Okla.)). Motions to strike are "generally disfavored and will be denied unless it is clear that under no circumstances could the defense succeed." *Connell v. City of New York*, 230 F. Supp. 2d 432, 438 (S.D.N.Y. 2002); *see also William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986) (motion to strike affirmative defenses not favored).

[5] Fed. R. Civ. Pro. ("Rule") 12(f) provides:
>  (f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>  (1) on its own; or
>  (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

The Rules discussed in this opinion are incorporated by reference by the Federal Rules of Bankruptcy Procedure. Carla Franco cited Rule 12(f) in her motions.

The problem with relying on Rule 12(f) is that it does not address late-filed answers. Rather, it refers to striking a defense "from a pleading," rather than striking the entire pleading. Further, the most relevant language of the Rule is about an "insufficient defense," which refers to the defense's merits rather than timeliness. *See generally* 5C Wright & Miller, Federal Practice and Procedure: Civil 3d § 1381 (discussing what types of defenses may be vulnerable to a motion to strike; no mention is made of late-filed defenses).

Several courts analyzing the issue have concluded that the Rules do not specify a consequence for filing an answer late. For example, the *Barefield* court stated: "The Federal Rules of Civil Procedure do not . . . 'provide a specific sanction for late filing of an answer.'" 2019 WL 918206 at *2, quoting *McCabe v. Arave*, 827 F.2d 634, 641 (9th Cir. 1987); *see also Franklin v. County of Placer*, 2018 WL 1940956, at *6 (E.D. Cal.) (quoted above); *Wynes v. Kaiser Permanente Hospitals*, 2013 WL 2449498 (quoted above). The Court agrees with this conclusion.

C. The Competing Standards for Determining What to Do With Late-Filed Answers.

    1. Rule 6(b)'s "Excusable Neglect" Standard. Grappling with the fact that the Rules do not provide a specific penalty for filing an answer late, some courts have turned to Rule 6(b), which provides:

> (b) Extending Time.
>  (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>     (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>     (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

These courts treated late answers as requests to extend the time to answer under Rule 6(b)(1)(B). The courts therefore analyzed whether the failure to answer timely was due to "excusable neglect." *See, e.g., Jenn-Ching Luo v. Baldwin Union Free Sch. Dist.*, 2014 WL 3943099, at *4 (E.D.N.Y.),
-5-

aff'd, 677 F. App'x 719 (2d Cir. 2017) (the court denied a motion to strike an untimely answer and granted an extension of time to file the answer under Rule 6(b)); *Sartori v. Steider & Associates, P.C.*, 2016 WL 9774944 at *3 (D.N.M.), *report and recommendation adopted*, 2016 WL 9774943 (D.N.M.) (analyzing a motion to strike an untimely answer under Rule 6(b)); *Trustee of the NM Pipe Trades Health and Welfare Trust Fund v. Mares Plumbing & Mech., Inc.*, 2012 WL 13080108, at *7 (D.N.M.) (dealing with a motion to strike an untimely answer under Rule 6(b)).

There is considerable guidance about what constitutes "excusable neglect:

> The Supreme Court has recently elaborated on the meaning of "excusable neglect," in the context of the courts' discretionary powers to excuse certain failures: "Congress plainly contemplated that the courts *would be permitted*, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388 (1993) (emphasis supplied).

*Stringfellow v. Brown*, 105 F.3d 670, at *1 (10th Cir. 1997) (unpublished). "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388.

> Excusable neglect "is a somewhat elastic concept" that allows courts "to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 388, 392 (1993).

*Sartori*, 2016 WL 9774944 at *3.

> The [*Pioneer*] Court held that the determination whether a party's neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S. Ct. 1489. Such circumstances include "[1] the danger of prejudice to the [nonmoving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.*

*United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004) (quoting and citing *Pioneer*).

"Control over the circumstances of the delay is 'the most important single ... factor ... in determining whether neglect is excusable.'" *Stringfellow*, 105 F.3d 670 at *2, *citing City of Chanute v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994).

2. <u>Rule 55's "Good Cause" Standard</u>. Rather than using Rule 6(b), some courts have treated motions to strike late answers as equivalent to motions for entry of default under Rule 55(a), and have treated late answers as motions to set aside defaults under Rule 55(c). For example, in *Heber v. U.S.*, 145 F.R.D. 576 (D. Utah 1992) the court stated:

> Although styled as a Motion to Strike, the substance of Heber's motion is that a defendant's failure to file a timely response is a default, and that his Motion to Strike is equivalent to a motion for entry of default under Federal Rule of Civil Procedure 55(a). *See John v. Sotheby's, Inc.,* 141 F.R.D. 29, 35 (S.D.N.Y.1992). "Rule 55(a) provides for the entry of a default '[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules.'" *Id.* (quoting Fed.R.Civ.P. 55(a)). Consequently, "[t]he filing of a late answer is analogous to a motion to vacate a default", because "the party filing the late answer receives 'the same opportunity to present mitigating circumstances that [it] would have had if a default had been entered and [it] had moved under Rule 55(a) to set it aside.' " *Id.* (quoting *Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir.1981)). Accordingly, the court treats Heber's motion as a Motion for Entry of a Default Judgment, and the government's response as a Motion to Set Aside a Default. *Id.*

145 F.R.D. at 577. The discussion in *Barefield* is similar:

> In reality, a motion to strike an untimely answer is in substance a motion for entry of default under Federal Rule of Civil Procedure 55, and "the filing of a late answer is analogous to a motion to vacate a default, because the party filing the late answer receives the same opportunity to present mitigating circumstances that it would have had if a default had been entered and it had moved under Rule 55(a) to set it aside." *McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002) (internal quotation marks and alterations omitted) (quoting *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 35 (S.D.N.Y.1992)).

2019 WL 918206, at *2.

Under Rule 55(c), a default can be set aside for "good cause." The good cause standard is discussed in *Crutcher v. Coleman*, 205 F.R.D. 581 (D. Kan. 2001):

-7-
Case 17-01001-t    Doc 95    Filed 08/08/19    Entered 08/08/19 14:37:15 Page 7 of 12

> The principal factors in determining whether defendant has shown good cause to set aside an entry of default include (1) whether the default resulted from culpable conduct by defendant, (2) whether plaintiff would be prejudiced if the Court sets aside the default and (3) whether defendant has presented a meritorious defense. See *Hunt v. Ford Motor Co.,* 65 F.3d 178, 1995 WL 523646, at *3 (10th Cir.1995); *In re Dierschke,* 975 F.2d 181, 183 (5th Cir.1992). These factors are not "talismanic" and the Court may consider other factors. *Hunt,* 65 F.3d at 184. The standard for setting aside an entry of default under Rule 55(c) is fairly liberal because "[t]he preferred disposition of any case is upon its merits and not by default judgment." *Gomes v. Williams,* 420 F.2d 1364, 1366 (10th Cir.1970).

205 F.R.D. at 584. "Good cause" is a less exacting standard than "excusable neglect." *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n. 6 (10th Cir. 1997) (good cause is a lesser standard than excusable neglect); *Beecham v. XPO Logistics*, 2019 WL 2053891, at *1 (D. Kan.) (quoting and following *Garberg*).

        3.      <u>The Court's Inherent Power</u>. Finally, some courts have approached the issue of striking late answers by considering their inherent power to enforce the Rules, including Rule 12(a).[6] For example, in *State Comp. Ins. Fund v. Capen*, 2016 WL 9083270 (C.D. Cal.), the court held: "Federal courts have 'inherent power' to impose sanctions – say, striking an untimely answer – for violation of Rule 12(a)." 2016 WL 9083270, at *2, citing *McCabe v. Arave*, 827 F.2d 634, 640 (9th Cir. 1987). Any exercise of sanctions under a court's inherent powers must first be preceded by a finding of bad faith. *McCabe*, 827 F.2d at 640; *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986); *Barefield*, 2019 WL 918206 at *2.

D.      <u>The Third Party Answer Should Not Be Stricken</u>.

As the proper standard for evaluating Carla Franco's motions to strike is unclear, the Court will consider each of the three alternative tests outlined above.[7] It should be noted, however, that

---

[6] Rule 12(a)(4) gives a defendant 14 days to answer a complaint if the defendant's motion to dismiss is denied.

[7] The Court's view is that, given the strong public policy favoring resolution of disputes on the merits, the more relaxed "good cause" or "inherent power" standards are preferable to the "excusable neglect" standard when deciding whether to allow late answers.

-8-
Case 17-01001-t    Doc 95    Filed 08/08/19    Entered 08/08/19 14:37:15 Page 8 of 12

Carla Franco's motion to strike the third party answer may well be based on a faulty premise, i.e., that the answer was late. On March 21, 2018, the Court ordered Carla Franco's counsel to circulate an order granting her partial final judgment against the third parties on the quiet title count. Ms. Franco's counsel never did. Because of the Court order, no answer was ever due. Later, apparently anticipating plaintiff's abandonment of the disputed mineral rights claim, the third parties answered the quiet title count. Given the Court's March 21 order, it is hard to see how that answer was late.[8]

    1.    <u>Excusable Neglect</u>. Assuming *arguendo* that the answer was late, the Court weighs *Pioneer's* "excusable neglect" factors:

| Factor | Discussion |
| --- | --- |
| Possible prejudice to Carla Franco. | Carla Franco did not suffer prejudice. Through the state court litigation on the ownership of the disputed mineral rights, Ms. Franco has known the third parties' position in this matter for years. The third parties have been active in this proceeding, the removed state court action, and the main bankruptcy case. Their views on the ownership of the disputed minerals is not a mystery. |
| The length of the delay and its potential impact on judicial proceeding. | The timing of the answer had no adverse impact on the adversary proceeding. |
| The reason for the delay, including whether it was within the reasonable control of the third parties. | The delay was caused in large part by Carla Franco's failure to circulate a partial final judgment on the quiet title count, as ordered by the Court. |
| Whether the third parties acted in good faith. | The third parties acted in good faith. The delay was not done to gain a litigation advantage or for any other improper purpose. |

Weighing the *Pioneer* factors and the facts of this particular situation, the Court finds that any lateness in filing the third party answer was due to excusable neglect.

---

[8] This opinion does not address whether the answer filed by third parties Celia F. Hougland, and Robert D. Hougland can be maintained considering their earlier disclaimer of interest in the disputed minerals. That apparent inconsistency can be addressed later.

3. <u>Good Cause</u>. The Court weighs the *Hunt v. Ford Motor* "good cause" factors as follows:

| Factor | Discussion |
|---|---|
| Whether the default resulted from culpable conduct by defendant. | The conduct of the third parties was not culpable, especially in light of the Court's directive to Carla Franco's counsel to prepare a partial final judgment. |
| Whether plaintiff would be prejudiced if the court set aside the default. | Carla Franco would not be prejudiced. The answer contained no information or legal position that she had not known before. No delay resulted. |
| Whether defendant has presented a meritorious defense. | The third-party defendants have presented a meritorious defense |

To the extent, if any, the answer was tardy, the Court finds that there is good cause to allow the late filing.

4. <u>Inherent Power</u>. There are insufficient grounds to exercise the Court's "inherent power" and strike the answer. The power to strike a late answer should not be exercised absent a showing of bad faith. There was no bad faith in this instance.

E. <u>Plaintiff's Answer Should Not be Stricken</u>.

Unlike the third party answer, plaintiff's answer clearly was about five months late. The Court will evaluate whether the tardiness warrants striking the answer.

1. <u>Excusable Neglect</u>.

| Factor | Discussion |
|---|---|
| Possible prejudice to Carla Franco. | Carla Franco did not suffer prejudice. As plaintiff points out in his response to the motion to strike, Carla Franco's quiet title counterclaim is the mirror image of plaintiff's quiet title claim, and raises the same issues as were raised in the pending removed state court proceeding. Plaintiff's position on estate ownership of the disputed minerals is well known to Ms. Franco. |
| The length of the delay and its potential impact on judicial proceeding. | The timing of the answer had no adverse impact on the adversary proceeding. Plaintiff has actively participated in this proceeding. The lateness did not cause any delay in trial. |
| The reason for the delay, including whether it was within the | The delay apparently was caused by the motion to dismiss the counterclaim and the complexity of the |

| | |
|---|---|
| reasonable control of the plaintiff. | quiet title litigation. The question of who owns the disputed minerals is pending in two proceedings, is raised twice in this proceeding, and was an issue in plaintiff's objection to Carla Franco's proof of claim. So, while the timing of the answer was in plaintiff's control, the late filing is understandable. |
| Whether the plaintiff acted in good faith. | Plaintiff acted in good faith. The delay was not done to gain a litigation advantage or for any other improper purpose. |

The Court finds that plaintiff's neglect in filing his answer timely was excusable.

2.  Good Cause.

| Factor | Discussion |
|---|---|
| Whether the default resulted from culpable conduct by defendant. | Plaintiff's conduct was not culpable. He did not delay filing his answer for any improper purpose. |
| Whether plaintiff would be prejudiced if the court sets aside the default. | Carla Franco would not be prejudiced. The answer contained no information or legal position she had not known before. The late answer did not delay trial of this matter. |
| Whether defendant has presented a meritorious defense. | Plaintiff has presented a meritorious defense. |

The Court finds that there is good cause for allowing plaintiff's answer to stand.

3.  Inherent Power. There are insufficient grounds to exercise the Court's "inherent power" and strike plaintiff's answer. There was no bad faith involved in filing the answer late.

III.  CONCLUSION

There are insufficient grounds to strike plaintiff's and the third parties' answers. The third party answer likely was not late. In any event, the answer easily passes the excusable neglect, good cause, and inherent power tests. Plaintiff's answer was late, but again passes each of the three tests. Given the strong policy in favor of reaching the merits of a dispute, the procedural complexity of the quiet title proceedings, and the good faith of plaintiff and the third parties, the Court has no problem ruling that the motions to strike should be denied. Separate orders will be entered.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 8, 2019

Copies to: electronic notice recipients